## No. 6482.

### HENRY STREET ET AL. VS. THE CITY OF NEW ORLEANS.

The City of New Orleans cannot be held responsible, under Section 2453 of the Revised-Statutes of 1870, for damage done to private property on the 14th of September, 1874, because the body of men, who took possession of the State Government on that memorable day, were not, in the sense of the Statute, a mob or riotous assemblage.

Furthermore, the police force of New Orleans, which, by the then existing laws, was not-under the control of the City Authorities, but under the orders of the Governor of the State, had been removed from its post of legitimate duty and made to leave private property unprotected. This fact, of itself, should release the City from the responsibility sought to be placed upon her.

APPEAL from the Superior District Court, parish of Orleans. *Lynch,* J.

R. King Cutler and Alfred Shaw for Plaintiffs and Appellants :

Plaintiffs' property was destroyed by a mob, which held possession of the City on the 14th of September, 1874, and on the following days-in defiance of its police or militia. Under section 2453 of Rev. Stats.. of 1870 the City is responsible. 28 An. 936.

E. Howard McCaleb, City Attorney, for Defendant and Appellee :

The judgment appealed from is correct, and should be affirmed, because :

First—The troops engaged in the memorable struggle of the 14th of September, 1874, were neither a mob nor a riotous assemblage, and hence the City is not liable. Rev. Stats. of 1870, sec. 2453 ; Dillon on Municipal Corporations, § 760.

Second—The City had been deprived of all power to preserve the peace by the enactment of the Metropolitan Police Law.

The opinion of the Court was delivered by

POCHÉ, J. Henry Street and nine other plaintiffs, joining together, sue the city of New Orleans for damages alleged to have been done to their property in this city, on the 14th, 15th, 16th, and 17th days of September, 1874, by a body of rioters, who took violent possession of the State House and other public buildings in the city, and used, carried away, destroyed or otherwise illegally disposed of, plaintiffs' property, which is fully described in several statements annexed to their petition.

The city filed a general denial, and urged as special defenses that. on the 14th of September the city government was suspended in its functions ; that the then existing State Government which had under the law the exclusive control of the police, had been subverted, or had ceased to exercise its authority, and that both State and city Govern-

ments were, during the days mentioned by Plaintiffs, under the control of a "*de facto*" Government which had supplanted the previous State Government, thus rendering the city powerless to hinder or prevent the acts complained of.

The case was tried by a Jury, who returned a verdict in favor of the city, upon which judgment was entered accordingly, and two of the Plaintiffs, Henry Street and Otto Burauld, have appealed.

The evidence shows that considerable property of Plaintiffs was destroyed or lost to them on the occasion referred to, and they claim damages therefor under the provisions of article 2453 of the Revised Statutes of 1870, under which all municipal corporations in this State are made liable for damages done to property by mobs or riotous assemblages in their respective limits. In order to recover in this suit, Plaintiffs must bring their case within the strict provisions of this statute, and they must therefore prove, beyond doubt, that the body of men who took possession of the State House, and in fact of the State Government, on the fourteenth of September, 1874, and held and controlled the same during the three succeeding days, was a mob or a riotous assemblage within the meaning of the Statute, and in default of such proof they must fail. The record is very voluminous, and the evidence decidedly conflicting, but after a careful perusal of the testimony, we are clear that the body of men, who co-operated in that movement, and on that memorable occasion, was not a mob or a riotous assemblage, nor unruly and wanton destroyers of property.

We are satisfied, on the contrary, that it was a well-organized body of citizens and patriots, acting under the orders of, and in obedience to, a State Government ordained by the people, and wielding legitimate power, and that those citizens were exercising the sacred rights of resistance to oppression and usurpation, under which their dearest rights were being destroyed.

And, therefore, the property which was destroyed, and the victims who fell, during the conflict were the inevitable results of a collision of arms between organized and contending forces, and under such a state of facts no municipal corporation can legally be held liable in damages for property destroyed.

The occurrences of the 14th of September, 1874, although they failed to bear the fruits which immediately resulted from the events of the 9th of January, 1877, from which the true Government of the State sprang into life, were not more than the latter, the deeds of a mob or of a riotous assemblage.

Both are marked epochs in the history of Louisiana, of which we take judicial cognizance; both contributed to the re-establishment of justice and order in the State; and neither could entail any liability for

-damages on the city of New Orleans, because, by accident, she happened 'to be the scene of the two movements.

And, besides, at that time, the city authorities had no control over the police force, which under the laws, was part of the existing State Government. The evidence in this case also shows that, on the 14th of September the police force of New Orleans had been removed by the State authorities from its post of legitimate duty, that it was converted into a Militia Brigade, and that, armed and equipped and officered as for war, that same police was marched out to disperse the citizens who had assembled to petition and remonstrate against the abuses and outrages perpetrated by the usurping State Government. This fact of itself should release the city from all liability in the premises.

Plaintiffs having utterly failed to make out their case, the verdict of the Jury, and the judgment of the lower Court, are therefore correct and are affirmed with costs.